IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COREY JOSEPH ANTWOINE SHAW, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LAKE COUNTY PROBATION OFFICER )<br>JACOB OTTO, in his personal and official )<br>Capacity, LAKE COUNTY PROBATION )<br>OFFICER ERIN STOKES, in her personal )<br>and official capacity, COOK COUNTY )<br>SHERIFF TOM DART, UNKNOWN )<br>EMPLOYEES OF THE COOK COUNTY )<br>SHERIFF'S DEPARTMENT, in their )<br>personal and official capacities, COOK )<br>COUNTY; UNKNOWN EMPLOYEES OF )<br>THE COOK COUNTY DEPARTMENT )<br>OF CORRECTIONS, in their personal and )<br>official capacities, OFFICERS NICK )<br>MEDRANO and BRANDON TOMKO OF )<br>THE LAKE COUNTY, INDIANA, )<br>SHERIFF'S DEPARTMENT, in their )<br>personal and official capacities, OSCAR )<br>MARTINEZ, SHERIFF OF LAKE )<br>COUNTY, INDIANA, in his official )<br>capacity, )<br>)<br>Defendants. ) | Case No: 22-cv-0439<br><br>Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Corey Joseph Antwoine Shaw filed this civil rights action against multiple individuals and officials alleging a host of constitutional violations and state law claims in connection with his detention in the Lake County Jail in Indiana and the Cook County Jail in Illinois. Before the Court for ruling are the motions to dismiss filed by Defendant Sheriff Tom Dart [37] and Defendant Probation Officers Erin Stokes and Jacob Otto [38]. For the reasons that follow, both motions are granted.

1

The claims against Sheriff Dart in Count XVI are dismissed with prejudice as time-barred. As such, Plaintiff's motion to compel production from Sheriff Dart [39] is denied as moot. Furthermore, the Court lacks personal jurisdiction over Probation Officers Stokes and Otto. However, in light of the potential statute of limitations issues presented by the claims against them in Counts I-XII, the Court finds those claims should be severed and transferred to the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1631. Accordingly, the Clerk is directed to transfer the severed claims against Defendant Lake County Probation Officers Erin Stokes and Jacob Otto (Counts I-XII) to the United States District Court for the Northern District of Indiana.

## BACKGROUND

According to the First Amended Complaint, Plaintiff Shaw was sentenced to imprisonment in September 2009, and spent seven years in the Indiana Department of Corrections. (Dkt. 35 at ¶ 11). He completed his sentence in May 2014, and was placed on probation for a term of two years, which was later extended by six months; thus, Shaw's discharge date from probation was November 11, 2016. (*Id*. at ¶¶ 11-12). Although he complied with the conditions of his probation, Defendant Stokes, his parole officer at the time, failed to discharge Shaw from probation in November 2016. (*Id*. at ¶¶ 13-14). On June 19, 2019, Defendant Otto filed a Petition to Revoke Probation against Shaw and a warrant was issued for Shaw's arrest. (*Id*. at ¶ 15). Shaw was pulled over by an Illinois state police officer while driving on August 9, 2019. (*Id*. at ¶ 16). The Illinois officer ran Shaw's name, informed him that a warrant was out for him in Lake County, Indiana, and took him into custody. (*Id*.)

During his interaction with the Illinois state police and while he was in custody in Cook County, Illinois, Shaw alleges that various unnamed police and corrections officers failed to

respect his religious requirements by, *inter alia*: not referring to him by his Moorish name,[1] forcing him to remove his head covering (including in front of a female officer), requiring him to change clothes out of his "Islamic shirt and shorts," failing to provide him a vegan diet, changing his racial designation to "white" after he objected to being categorized as "black," and prohibiting him from attending religious services with other Muslim inmates. (*Id.* at ¶¶ 17-27). On his first court date after the August 2019 arrest, Shaw "accepted a plea agreement," and the sheriff of Lake County, Indiana dispatched a transport "to retrieve plaintiff from Cook County jail." (*Id.* at ¶¶ 28-29). As he was being picked up, unnamed employees of the Cook County Jail told Defendants Nick Medrano and Brandon Tomko (of the Lake County, Indiana Sheriff's Department) that Shaw was a "hard case" and "cast additional aspersions on plaintiff because of his religion so that [Medrano and Tomko] would believe that the plaintiff was a threat because he was Muslim." (*Id.* at ¶ 29). Shaw was then transferred to the Lake County jail in Indiana. (*Id.* at ¶ 30).

Shaw informed the employees at the Lake County jail of his religious and dietary requirements, but they were "ignored in part because of the negative message conveyed by the Cook County employees." (*Id.* at ¶ 31). At his probable cause hearing before a magistrate judge, Shaw was informed that a warrant had been issued for his alleged probation violation, and an initial violation of probation hearing was set several weeks ahead. (*Id*. at ¶ 33). It appears that Shaw was released on bond after the probable cause hearing, as he alleges that "[a]t his initial violation of probation hearing, he was allowed to resolve the issue from outside of the jail." (*Id.* at ¶ 34). Because Shaw was still on probation (due to Defendant Stokes's failure to discharge him from probation in 2016), Shaw had to remain in Indiana away from his family and religious community,

---

[1] Plaintiff is a member of the Moorish Science Temple of America. (Dkt. 35 at ¶ 17).

3

as well as "cease his holistic regimen of medical marijuana treatment for Crohn's disease" because he was subject to random drug tests. (*Id*. at ¶¶ 34-35).

On January 6, 2020, Shaw arrived early for his regularly scheduled probation reporting meeting with Defendant Otto. (*Id*. at ¶ 40). After waiting for five minutes, two Lake County Sheriff's deputies told Shaw he was under arrest; according to Shaw, "Defendant Otto had a warrant issued for [Plaintiff's] arrest earlier that day without waiting to see if he would even show up" for his probation reporting meeting. (*Id*. at ¶ 41). Shaw was again detained at the Lake County jail; at the next court date, the magistrate judge granted his request for bond and he was released. (*Id*. at ¶ 42). On January 21, 2020, Shaw's defense attorney filed a motion to dismiss the motion to revoke his probation, at which point the state "concluded that the plaintiff's probation should have been terminated in 2016 at the very latest, but, due to their own negligence, the proper documentation was never entered." (*Id*. at ¶ 43). On January 27, 2020, a motion to withdraw the state's petition and discharge Plaintiff from probation was filed and granted. (*Id.*)

Shaw filed the initial complaint in this case on January 25, 2022. (Dkt. 1). He was granted leave to amend his complaint and did so on December 20, 2022. (Dkt. 35). The 17-count First Amended Complaint brings the following claims: 1) 42 U.S.C. § 1983 against Stokes for "revoking plaintiff's probation without due process when he (sic) failed to discharge the plaintiff from probation" (Count I); 2) 42 U.S.C. § 1983 against Otto for filing a Petition to Revoke Probation against the plaintiff without due process on June 19, 2019 (Count II); 3) Indiana State Malicious Prosecution Against Defendant Otto for filing a Petition to Revoke Probation against the plaintiff on June 19, 2019 (Count III); 4) Indiana State False Imprisonment Against Otto (Count IV); 5) Indiana State Negligent Infliction of Emotional Distress against Otto (Count V), 6) Indiana State Intentional Infliction of Emotional Distress against Otto (Count VI); 7) 42 U.S.C. § 1983 against

4

Otto for filing a Petition to Revoke Probation against the plaintiff without due process on January 6, 2020 (Count VII); 8) 42 U.S.C. § 1983 against Otto for violation of the Fourth Amendment by issuing a warrant for Plaintiff's arrest without probable cause (Count VIII); 9) Indiana State Negligent Infliction of Emotional Distress against Otto for "in effect, revoking Plaintiff's probation without due process when he charged the plaintiff with a probation violation on January 6, 2020" (Count IX); 10) Indiana State Intentional Infliction of Emotional Distress against Otto for "in effect, revoking Plaintiff's probation without due process when he charged the plaintiff with a probation violation on January 6, 2020" (Count X); 11) Indiana State Malicious Prosecution against Defendant Otto for filing a Petition to Revoke Probation against the plaintiff on January 6, 2020 (Count XI); 12) Indiana State False Imprisonment against Otto for filing a petition to revoke probation on January 6, 2020 (Count XII); and 13) *Monell* claim against Defendant Cook County Sheriff Tom Dart related to Cook County Department of Corrections employees' violations of Plaintiff's religious rights (Count XVI). Sheriff Dart and Probation Officers Otto and Stokes have each moved for dismissal of the respective claims against them. Both motions are both fully briefed and ripe for disposition.

## DISCUSSION

**I.    Legal Standard**

Defendants have moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In ruling on a motion pursuant to Rule 12(b)(6), the Court must treat the allegations in the complaint as true and give Plaintiff the benefit of any reasonable and favorable inferences from those allegations. *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 646 (7th Cir. 2017.)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal based on a lack of personal jurisdiction. Plaintiff bears the burden of establishing a *prima facie* case for personal jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Where, as here, neither party has presented affidavits or other evidence relating to personal jurisdiction, the Court rules on the motion based on the complaint allegations, taking all allegations as true and drawing all reasonable inferences in the non-movant's favor. *Walker v. Walgreens Specialty Pharmacy, LLC*, 2023 WL 5334609, at *4 (N.D. Ill. Aug. 18, 2023).

## II. Sheriff Dart's Motion to Dismiss

The Court dismisses the *Monell* claim in Count XVI against Sheriff Dart as time-barred. Although statute of limitations issues are affirmative defenses not usually resolved at the motion to dismiss stage, "if a plaintiff pleads facts that show its suit barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis." *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (citing *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718–19 (7th Cir. 1993)). The statute of limitations for claims brought pursuant to 42 U.S.C. § 1983 in the state of Illinois is two years. *Anthony v. Soy Capital Bank & Trust*, 182 F.3d 921, 921 (7th Cir. 1999). "[A] *Monell* claim accrues when the plaintiff knows or should know that his constitutional rights were violated." *Oliva v. City of Chicago*, No. 21-cv-06001, 2023 WL 2631575, at *6 (N.D. Ill. Mar. 24, 2023) (citing *Armour v. Country Club Hills*, 2014 WL 63850, at *5 (N.D. Ill. Jan. 8, 2014)). Because the instant suit was initiated on January 25, 2022, Shaw's claims against Sheriff Dart under *Monell* would have to accrue on or after January 25, 2020, to survive the motion to dismiss.

All of Shaw's claims against Sheriff Dart in the First Amended Complaint concern his treatment while in the custody of the Cook County Department of Corrections. They are based on the alleged failure of Cook County employees to respect Shaw's religious requirements and provide him with a religiously and medically acceptable diet. They do not make out a claim for malicious prosecution or other type of violation where the accrual of the claim does not occur until some later date. *See Heck v. Humphrey*, 512 U.S. 477, 489, 114 S. Ct. 2364, 2373-74 (1994). Accordingly, Shaw knew or should have known that his constitutional rights were violated during the time he was in the custody of the Cook County Department of Corrections.

It is unclear from Shaw's amended complaint when he was transferred from Cook County jail to Lake County custody, but it was certainly between his August 2019 arrest in Illinois and his first December 2019 meeting with Probation Officer Otto in Indiana. (*See* Dkt. 35 at ¶¶ 16, 39). To the extent that any constitutional violation occurred during this time period, it clearly happened more than two years before Shaw's complaint was filed, and therefore – is time-barred.

Shaw primarily argues that he was still technically in custody while on probation in Indiana, which means that his claims did not accrue until he was released from parole on January 27, 2020. That argument is not relevant for the type of claim he brings against Sheriff Dart.[2] Certain claims accrue and limitations periods run even when a plaintiff is in custody. For example, a Section 1983 claim for wrongful arrest typically runs from the date of the arrest, not the date the detention ends. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 1095 (2007). More pointedly, a claim for a violation of the constitutional right to exercise one's religion under the Free Exercise Clause of the First Amendment accrues and runs even while a person is incarcerated. *See Bocanegra v. Blummer*, 3:20-CV-616-RLM-MGG, 2020 WL 7353773, at *2 (N.D. Ind. Dec. 15,

---

[2] The Court does not decide when Shaw's other claims accrued for purposes of the relevant statutes of limitations. This discussion is limited to the claim against Sheriff Dart.

2020) (holding that incarcerated individual's claims under the Free Exercise clause accrued at the time of the violation and dismissing them as time barred). Shaw has cited no authority supporting his argument that the applicable statute of limitations for his claim against Sheriff Dart should be tolled until his final release from custody in Indiana. Of course, even if the Court was persuaded that the statute of limitations could not run until he was out of custody, the facts alleged here establish that Shaw was out of Cook County's custody well before the limitations period ended. In other words, while he may have been in custody until January 27, 2020 (an issue the Court does not reach here), he was in the custody of Lake County, not Cook County. Accordingly, Count XVI against Sheriff Dart is dismissed with prejudice.

### III. Probation Officers Stokes and Otto's Motion to Dismiss

This Court lacks personal jurisdiction over Lake County Probation Officers Stokes and Otto.[3] In a federal question case, "a federal court has personal jurisdiction over the defendant if either federal law or the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir.2010) (citing *Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104–05, 108 S. Ct. 404, 98 L.Ed.2d 415 (1987)). Section 1983 does not allow for nationwide service, so Illinois law governs the personal jurisdiction analysis here. *Kinslow v. Pullara*, 538 F.3d 687, 690 (7th Cir. 2008). "Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be allowed under either the Illinois Constitution or the United States Constitution" and "there is no operative difference between these two constitutional limits." *Mobile Anesthesiologists*, 623 F.3d at 440; 735 ILCS 5/2–209(c).

---

[3] Because the Court concludes that it does not have personal jurisdiction over Defendants Stokes and Otto, it does not reach the other arguments raised in their motion to dismiss. They may raise those arguments before the United States District Court for the Northern District of Indiana after Shaw's claims against them are severed and transferred there.

8

There are two avenues for establishing personal jurisdiction—specific jurisdiction and general jurisdiction. For specific jurisdiction "[t]his inquiry is the classic formulation of the analytical paradigm for assessing an assertion of specifically affiliating jurisdiction" articulated in *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Purdue Research Foundation*, 338 F.3d at 780. In other words, "[s]pecific personal jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists*, 623 F.3d at 444. The requirements for general jurisdiction are "considerably more stringent" than specific jurisdiction, and can be met where a defendant has "continuous and systematic" contacts with the forum state that are "so extensive to be tantamount to [defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research*, 338 F.3d at 787 (internal citations and quotations omitted).

The most relevant case analyzing personal jurisdiction in the context of out-of-state probation officers is *Hankins v. Burton*, Case No. 4:11-cv-4048-SLD-JAG, 2012 WL 3201947 (C.D. Ill. Aug. 3, 2012). While the plaintiff in *Hankins* was on probation, her supervision was handled by various probation officers and departments in Arkansas, Missouri, and Illinois. 2012 WL 3201947, at *1-2. During her probation period in Illinois, plaintiff alleged that her Arkansas probation officer refused to provide her with copies of her records, and when she finally received them, they revealed that "she was wrongly kept on probation for a year longer than she should have been." *Id.* at *2. She brought seven counts for Section 1983 violations and "one count of intentional or negligent infliction of emotional distress based on the alleged unauthorized extension of her probation" against a host of probation officers, departments of corrections,

9

probations departments, and states. *Id.* at *3. The Illinois district court held that plaintiff had failed to make a *prima facie* showing that it had personal jurisdiction over the out-of-state probation officers from Arkansas and Missouri,[4] explaining:

> [Plaintiff] responds by arguing that the Interstate Compact for Adult Supervision is a "contract" between the sending and receiving states which supports personal jurisdiction over the individual Arkansas Defendants. However, the mere existence of an agreement between states regarding the transfer of probationers does not mean that Probation Officers supervising the interstate transfer of probationers "purposefully availed themselves of the privilege of conducting activities" within the receiving state, nor should approving the transfer of a probationer reasonably have led the officers to anticipate being haled into court in the receiving state. The Court therefore concludes that exercising personal jurisdiction over the individual Arkansas Defendants would offend the requirements of due process.

*Hankins*, 2012 WL 3201947, at *6 (internal citations omitted).

The Court agrees with *Hankins* that it does not have personal jurisdiction over Probation Officers Stokes and Otto based on the allegations contained in Shaw's operative complaint. All actions taken by Stokes and Otto occurred in Indiana, not Illinois. The warrant for his arrest was issued from Indiana, the failure to release Shaw from probation in a timely manner was done in Indiana, the activities related to Shaw's continued probation after his transfer to Indiana all occurred in that state as well. The only fact remotely tying Stokes and Otto to Illinois is that when Shaw was pulled over in Illinois, the Illinois state police officer who ran his name found that a warrant was out for him in Indiana. The Court does not believe that putting a warrant into a multistate database rises to the level of **purposefully directing activities at Illinois that would**

---

[4] The *Hankins* court considered the issue of personal jurisdiction only to the extent the claims were brought against the defendant probation officers in their individual capacity, because it ruled they had 11th Amendment immunity for claims brought against them in their official capacity. *Hankins*, 2012 WL 3201947, at *6. The Court's ruling here does not extend to that question. This Court lacks personal jurisdiction over Defendants Stokes and Otto regardless of whether the claims were brought against them in their official or individual capacity.

satisfy the specific jurisdiction test or the type of continuous and systematic contacts required to meet the general jurisdiction test. Other district courts across the country have also held that out-of-state probation officers are not subject to personal jurisdiction where the only alleged contact arises from their interactions with a probationer in their home state. *E.g.*, *Faber v. United States*, Case No. 19-cv-0199, 2019 WL 6049926, at *2 (W.D. La. Oct. 15, 2019); *Nabaya v. Aber*, Case No. 17-440, 2018 WL 15383311, at *2 (D.D.C. Mar. 31, 2018); *Morales-Dorantes v. United States*, Case No: 1:15-12647, 2018 WL 3650386, at *4 (S.D. W. Va. Mar. 27, 2018); *Higdon v. Cannon*, Case No. 1:11-cv-0194, 2012 WL 424965, at *7-10 (E.D. Tenn. Feb. 9, 2012). Because Shaw has not alleged sufficient contact between Defendants Stokes and Otto in Illinois, the Court finds that it does not have personal jurisdiction over them based on the facts alleged.

Shaw makes several arguments in opposition to their motion, none of which are persuasive. First, he contends that Stokes and Otto have consented to personal jurisdiction by having their attorneys file an appearance in this case. However, it is well-established that filing an appearance does not waive the right to challenge personal jurisdiction, where, as here, "defendants comply with the rules by raising their defenses in their first responsive pleading . . . ." *Swanson v. City of Hammond, Ind.*, 411 Fed. Appx. 913, 915 (7th Cir. 2011). Second, Shaw asserts that they consented to personal jurisdiction over them by waiving service of the summons in this case. However, this argument is expressly contradicted by the plain language of Federal Rule of Civil Procedure 4(d)(5), which states "[w]aiving service of a summons does not waive any objection to personal jurisdiction or to venue." Finally, Shaw argues that issuing a warrant for his arrest is sufficient contact to satisfy the requirements of personal jurisdiction as Stokes and Otto knew or should have known that Plaintiff resided in Illinois. No such allegations are presented anywhere in the First Amended Complaint, and because neither side has offered any declarations or

11

affidavits, the Court is limited to the allegations in Shaw's pleading. *See Walker*, 2023 WL 5334609, at *4 (discussing shifting burdens depending on parties' submission of evidence).

Based on the allegations in the First Amended Complaint, Shaw has not alleged any facts that would support an inference that the actions taken by Probation Officers Stokes or Otto were intentionally directed at Illinois or that they were aware that he resided in Illinois at the time Defendant Stokes failed to discharge Shaw from probation or when Defendant Otto subsequently issued an arrest warrant for Shaw. Because the First Amended Complaint fails to make out a *prima facie* case for personal jurisdiction, the Court will grant the motion to dismiss filed by Defendants Stokes and Otto.

Pursuant to 28 U.S.C. § 1631, the Court may transfer a case where: 1) it finds that there is a want of jurisdiction; 2) there is another court in which the action could have been brought at the time it was filed; and 3) doing so is in the interests of justice. Here, the Court has found that it lacks personal jurisdiction over Defendants Stokes and Otto and finds that these causes of action could have been brought in the United States District Court for the Northern District of Indiana, where Defendants Stokes and Otto work as probation officers for Lake County. Moreover, because there are such obvious facial issues regarding the statute of limitations on Shaw's claims against Stokes and Otto, the Court finds that it would serve the interests of justice to preserve Plaintiff's initial filing date. *See Meherg v. Skrivan*, No. 18-cv-4696, 2020 WL 374684, at *5 (N.D. Ill. Jan. 22, 2020) (transferring case where statute of limitations concerns were raised). Although a court may consider the merits of a case before transferring it, the Court declines to do so here because the statute of limitations issues and various accrual dates based on Indiana law are too complicated for the Court to determine at this stage that Shaw's claims are "a sure loser." *Id.* The most prudent course of action is to sever the claims against Defendants Stokes and Otto and

transfer those claims to the United States District Court for the Northern District of Indiana for further proceedings.

## CONCLUSION

For all the foregoing reasons, the Court grants Defendant Sheriff Dart's Motion to Dismiss [37] and denies as moot Plaintiff's Motion to Compel Production from Sheriff Dart [39]. The Court grants Defendant Probation Officers Stokes and Otto's Motion to Dismiss [38] due to lack of personal jurisdiction. However, the Court finds that those claims (Counts I-XII) should be severed and transferred to the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1631. The Court orders the Clerk to transfer the severed claims against Defendants Stokes and Otto to the United States District Court for the Northern District of Indiana.

Dated: November 14, 2023                    ENTER:

                                            _____
                                            LaShonda A. Hunt
                                            United States District Judge